All right, we'll now return to case number one, Ortiz v. City of New York.  It pleases the Court, my name is David Zellman. I was the trial counsel below. I'm an appellant counsel. It would be helpful if you came on time, by the way. I apologize, the trains were running very slow this morning. Go ahead, proceed. This is a very straightforward case involving very straightforward issues. The first issue I'd like to address is the issue regarding garden variety emotional distress and whether or not psychological records lose their privilege in a civil rights case. The defendants try to cloud these issues by saying that we agreed to certain redactions, that we agreed to allow this information in, that this was an 11th hour attempt. Did you offer the records yourself, the redacted records? No. Let me go back. At the commencement of the suit, in every case, we give an authorization that provides all records that were subsequent to an injury. We do that in every case. It's required under the rules. Now, in this particular case, there was physical injury and psychological injury that were all in one record at one hospital where the client had gone continuously. In 2016, a whole year prior to this trial, we informed the Court that we were only pursuing garden variety emotional distress. We would like to retain the privilege on our psychological records. Of course, the records regarding physical injury. Then you brought it in in the trial. No. Not the case at all. This is the confusion. You did not offer the records at trial? That was my understanding also. No. Let me just explain what happened, because it's not clear from the record, and I do apologize because Your Honors don't have the full transcript. I've just learned that very recently, and I'm trying to get it. But we have what we have, and we decide on what we have. I know. There was a pretrial conference on January 31st, which is not yet in the record, and I'm going to try to get it to the Court within a few days. But at the January 31st conference, the judge indicated that he's going to overrule our objection under Sims v. Bott. He's going to allow defense counsel to introduce these records. We objected. There was a long discussion about Sims v. Bott at the January 31st conference, and I apologize this is not before Your Honors at present. It just was never requested. And the judge has been very helpful in allowing us to get the records because my client is proceeding pro se. But after that point, because the judge ruled that those records would come in, the judge also allowed certain redactions for issues that were irrelevant to this litigation that I don't even want to put on the record, but other health issues that are completely irrelevant to this litigation, he did allow redactions. At that point, the records were offered by both parties because they — Didn't the judge at that point say, come back and tell us what else you want? Didn't the judge ask you to come back and you didn't come back? I don't understand. I thought that at the point that the redactions were submitted, there was a request by the judge, if you want anything else, come in.  And you did not come back. There was another conference after that. And I do apologize that you don't have it. Did you discuss it in the brief? No. You don't discuss a January 31st conference in your brief? Right. I just picked up on it. You don't provide us with a transcript. And how are we supposed to make a decision based on that? It was a mistake. It was a mistake. And I have a copy of the e-mail that I received from defense counsel after that conference indicating what the judge's ruling was and the fact that they were going to submit these records. We had no choice. Do you refer to the January 31st conference in your reply brief? No. It was an error that I picked up very recently after that was picked up. And I do apologize for that. Again, it's because we were proceeding on the original record that we didn't have that, the funds to get that. And we will now ---- You must not have thought it was important if you didn't put it into either one of your briefs. It's obviously critical because it's the city is in essence arguing that we had some choice in this matter about whether these records were going in or not. Absolutely not the case. That's not what happened in this case. The January 31st conference, the judge made it very clear that ---- How was it prejudicial that these records came in? Well, there's ---- I think it's a public policy, number one, is that ---- Was there any prejudice? Absolutely. There's no question there's prejudice. The prejudice was that the city was asking my client on the stand to explain why the doctors wrote certain things that they wrote. He was completely unable to do so. And he just floundered there on the stand trying to explain why the doctors wrote about this incident. There was two incidents that happened very close in time. One was a home invasion robbery and this incident with the police. And the psychologist was writing just generally about what he was talking about, but without really delineating which injury came from which incident. So it was just an absolute mess. Do these things relate to his credibility as well? You could argue that. I mean, there's of course you could argue that his injury was actually related to the home invasion robbery versus the incident that happened in the subway. But explain to me how it was harmful. I mean, you've described your client. But explain to me how this was specifically harmful to the jury in this case when it came out against your client. My client was prejudiced because he was placed in an impossible position of having to explain why his psychologist wrote certain things in the records. That was exactly the questions that was asked on cross. How does that fact prejudice your client with respect to the issue that was being tried? Because what the city argued below was that my client's injuries were confused and my client's memory was confused between these two incidents, the home invasion robbery. Aren't those fair arguments? Absolutely. What's the prejudice then? Well, there's my argument is really about public policy, about the fact that people, when they go to a psychologist, they should be able to talk freely. That is fine. Right. And that's a fine argument. But we are concerned. We don't decide public policy issues in the abstract. Right. And we want to know why that injured your client in this case. You may be completely right about public policy, but that isn't the question we have to address. I would say my client was ill-equipped to explain why a psychologist that he was talking to would indicate certain things in the record that confused the issues. Do you object to those questions? At that point in time. The answer is no. The answer is no. Okay. So you didn't object. Well. How did you even give the Court an opportunity to correct the error without objecting? And all of our indications are you did introduce the medical records, which did contain this. So, I mean, who's responsible here for this alleged error? It seems to me you are. If you introduced those records, you clearly opened the door. You made a motion in LeMay at a December 22nd pretrial conference at page 39. There was a discussion about it. Page 39. I have it in front of me. We pulled it up on CMECF. We can't get all of it. Okay. And you specifically agreed between lines 9 and 15 to agree to work it out with defense counsel with regard to the redaction of the records. The records are then introduced by you. By you. And then when the questioning occurs that you now so vigorously object to, you never raised a single objection. Now, what were you thinking of? You were thinking of not preserving an error? Is that what you were thinking of? No. I just want to point out that I hear your argument. My response. It's not an argument. It's an assertion of having taken the time to have my clerk go through the records that were available that you didn't provide us, nor mention, remotely mention in your brief and make a misrepresentation when you offered the document. We did not. It's not an argument, sir. It's a comment on your lack of professionalism with regard to your representation in this matter. I apologize for the negligence on my behalf. I just picked it up very recently in preparing for this argument that. You might have thought about it before you wrote your brief. Right. I just want to say this. With respect to us offering the documents, we had absolutely no choice in the matter. There was a ruling on January 31st that those records were coming in. The judge outlined what the redactions would be allowed, and that's what we had to agree to. When we went to trial to try the case, it was a marked exhibit that was coming in no matter what. There was another point that I wanted to make. You're out of time. Okay. We'll hear from the other side. Good morning, Your Honors. Julie Steiner for the appellees. The post-incident psychological records were properly submitted as redacted and used during trial to impeach the plaintiff. Is there any objection to their admission? Before trial in terms of – not during trial, as you pointed out, Your Honor. In fact, as you also pointed out – The motion didn't eliminate, but there was never actually a ruling. There was never a ruling. And, in fact, the party said we would – and the city actually offered we would work with the plaintiff to redact the records so that no sensitive information about his psychological issues would go into trial. And the judge did ask or say, after you redact, if there's any more issues, come back. That did not occur. These records were introduced by the plaintiff on direct, used. Even certain things about Ambien and alcohol and all these other things were used on direct. And then on cross, we then used the ability to – used the opportunity to impeach him as to what was missing in those records. At no time did the defendants raise any emotional issues, past psychological issues. We were questioning him solely on what transpired regarding the prior home invasion and whatnot. We did not ask him to explain what his psychologist did not state. And if he is claiming that we did, he had every opportunity, and, in fact, in his pretrial order, suggested that he would call the psychologist, and he never did. As far as the voluntariness of the introduction of these records, it was in every regard a voluntary act on part of the plaintiff. He keeps citing to this local rule 8310, saying that he was required to. But if you read closely, it specifically says that if you are alleging something that's not garden variety emotional distress, that's when you must introduce or, excuse me, submit a release to the defendants. Because he submitted a release to us, he admits that in his complaint he was alleging non-garden variety emotional distress. You cannot now, once the city gets the records, and at trial, on the eve of trial, say, no, no, no, I kind of see what's in these records or actually what's not in these records. I now want to withdraw that claim. He cannot un-ring this bell, and that's exactly why this case is distinguishable from Sims v. Blount. In that case, he never alleged any emotional distress injuries in his complaint, which, if you review Mr. Ortiz's complaint, clearly does in terms of trauma, humiliation, terror, and damaged reputation. So he clearly did allege non-garden variety emotional distress. And also in Sims v. Blount, the records had not even been disclosed yet. They were disclosed here. And because those records clearly showed a problem with what transpired or what he said to his psychologist, that clearly is an impeachable moment. The defendants did that. We did not overstep our bounds. And they were properly used at trial in this trial in that regard. Would you talk about the probable cause issue for a second? Sure. I sense some confusion at some point.  I sense that this was the cops were called to the subway station. They he was detained for a period of time, so he was not free to go. Twenty minutes, yes. But you attempt to make the argument that there never was an arrest, but the court, nevertheless, went ahead and charged probable cause and false arrest, right? Correct. The judge said that it needed to be parsed out by the jury in terms of was there first an arrest, and if there was an arrest, whether there was probable cause. And these two jury questions were probably before the jury. There was not an issue, excuse me, particularly given that none of these issues did the plaintiff then after trial seek to all of his challenges are unpreserved. First of all, they were not even challenged in a motion to excuse me in the judgment. Excuse me. In a motion post verdict for a judgment, notwithstanding the verdict, nor did he seek a new trial. But in any event, there is an issue of fact in terms of whether there was an arrest. The desk appearance ticket in and of itself does not equate to an arrest. They can be given at different times. So at that point, the question to the jury becomes whether the circumstances surrounding that stop ripened into an arrest by terms of duration, whether handcuffs were used. I mean, the magic words don't have to be said. I mean, if he's not free to go and he's essentially detained, I mean, I see that there was a claim of illegal detention. I'm not familiar with that cause of act. But it would seem to me that an illegal detention is a false arrest. And that's what we had argued at the pretrial conference. That it was all, excuse me, that it was all one, one event, that all the information that the cops had for the stop, for the detention, for the desk appearance ticket, et cetera, were all for that one particular event. And that's why during that pretrial conference, we had argued that the illegal investigatory detention claim is not a separate claim. It's all one event. And so when we were talking about arrest and stop, we weren't saying, oh, it's clear there was no arrest, or yes, there was an arrest. That's where the confusion lies. But we did not make any admission, as plaintiff alleges, that there was an arrest. We, the entire time, and that's why we were at trial, there was an issue of whether or not there was an arrest. In fact, we had said specifically at the conference that he was given a desk appearance ticket in lieu of an arrest. Whether what happened during that 20 minutes ripened into an arrest is certainly a question of fact for the jury. You know, he's claiming he wasn't free to leave, but the cops said he was, you know, yes, he wasn't free to leave, but he wasn't handcuffed. He wasn't moved to a precinct and things of that nature. And all of those things were properly charged to the jury, and the jury was free to decide in the manner that it did. Thank you, Your Honors. The case will reserve decision. The remaining cases? I have a question, if I may, Mr. Zellman. Thank you, Your Honor. What is the nature, if I may ask it, of your representation? Are you representing Mr. Ortiz on a contingent fee or on a retainer? Contingent fee. Can I address? Can I have a two-minute reply? No. You weren't here. You didn't ask for rebuttal, so the answer is no. The remaining cases are on submission. Accordingly, I'll ask the clerk to adjourn. Thank you.